UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL B.,[1]

    **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 1:20-cv-14639
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

**I.**    **PROCEDURAL HISTORY**

On October 23, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since February 21, 2018. R. 73, 92, 160–66. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

upon reconsideration. R. 93–97, 108–10. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 111–13. Administrative Law Judge ("ALJ") Nicholas Cerulli held a hearing on February 3, 2020, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 28–64. In a decision dated April 10, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 21, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 12–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 26, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 20, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[3] On April 21, 2021, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 60 years old on his alleged disability onset date. R. 21. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 14–15.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis; pes planus; coronary artery disease; hypertension; and obesity. R. 15. The ALJ also found that Plaintiff's medically determinable mental impairment of adjustment disorder was not severe. R. 15–16.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 16.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 16–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a legal assistant, claim investigator, and the composite job of claim investigator and claims process manager. R. 21.

At step five, the ALJ relied on the testimony of the vocational expert and found that a significant number of jobs—*e.g.*, approximately 160,000 jobs as an claims clerk—existed in the national economy and could be performed by Plaintiff. R. 21–22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 21, 2018, his alleged disability onset date, through the date of the decision. R. 22.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision

of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 22. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 19.

**IV.    DISCUSSION**

Plaintiff raises several challenges to the ALJ's decision, including his contention that the ALJ erred when determining at step two that Plaintiff's mental impairments were not severe and in failing at step four to account for any mental limitations in the RFC. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 9–19; *Plaintiff's Reply*, ECF No. 22, pp. 1–4. This Court agrees.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "An ALJ's failure to consider the severity of an impairment or an ALJ's determination that an impairment is non-severe is not ordinarily dispositive at Step Two if the ALJ has found at least one severe impairment. This is because the ALJ is required to consider the combined effects of all impairments—regardless of severity—at Steps Three through Five." *Taylor v. Comm'r of Soc. Sec.*, No. 16-CV-05033, 2018 WL 2298358, at *8 (D.N.J. May 21, 2018) (citing, *inter alia*, 20 C.F.R. § 416.923; *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (finding harmless error where ALJ erred

in finding at Step Two that some, but not all, of claimant's impairments were not severe)); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

In the case presently before the Court, the ALJ concluded at step two that Plaintiff suffered only severe physical impairments: osteoarthritis; pes planus; coronary artery disease; hypertension; and obesity. R. 15. The ALJ also found that Plaintiff's medically determinable mental impairment, adjustment disorder, was not severe. R. 15–16. The ALJ specifically found, *inter alia*, that this mental impairment,

> does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [is] therefore nonsevere, as *the objective medical evidence related to this condition reflects no more than modest clinical findings* and minimal specialized psychiatric treatment (Exhs. 5F/55, 76; 6F/14-15; 8F; 9F). For instance, a November 2017 cognitive status screen was negative (Exh. 5F/76-77). A November 2018 depression screen was merely mildly positive, with a score of 4 (Exh. 5F/55). Indeed, at the time of filing, the claimant did not allege any significant limitations due to mental conditions (Exhs. 2E; 4E).
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> In understanding, remembering, or applying information, the claimant has mild limitations. The claimant related some issues with comprehension, but stated that he could perform simple maintenance, prepare meals, pay bills, and shop (Exh. 4E; Test.).
>
> In interacting with others, the claimant has mild limitations. The claimant did not allege any problems related to this domain, and according to his statements, the claimant is also able to shop and deal appropriately with authority (Exh. 4E).
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has mild limitations. The claimant reported some issues with concentration in his testimony. However, the claimant

> said that he is able to drive and manage funds, and previously related being able to pay attention as long as needed (Exh. 2E).
>
> Finally, the claimant has mild limitations in his ability to adapt or manage himself. The claimant did not allege any symptoms or limitations that relate to this criterion. Furthermore, the claimant also stated that he is able to handle self-care and personal hygiene, *and the substantial evidence of record does not reflect any meaningful issues with temper or impulse control* (Exh. 2E).
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

R. 15–16 (emphases added).

Plaintiff disagrees with this finding, arguing, *inter alia*, that the ALJ seeks to minimize Plaintiff's severe mental impairment by omitting medical evidence from the Department of Veterans Affairs ("VA") that contradicts the ALJ's finding that Plaintiff has only mild limitations in the four broad areas of functioning. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 16–19; *Plaintiff's Reply*, ECF No. 22, pp. 1–2. Plaintiff also argues, *inter alia*, that the ALJ failed to properly consider his mental impairments at step four when crafting the RFC. *Plaintiff's Memorandum of Law*, ECF No. 14, pp. 16–19; *Plaintiff's Reply*, ECF No. 22, pp. 2–4. Plaintiff's arguments are well taken.

On August 1, 2019, the VA issued a decision finding, *inter alia*, that "[s]ervice connection for adjustment disorder with mixed anxiety, depressed mood, chronic, and cannabis use disorder (claimed as any mental condition secondary to knees and left foot) is granted with an evaluation of 70 percent effective January 9, 2019." R. 509, 511. In reaching this decision, the VA cited to multiple items of evidence, including, *inter alia*, service treatment records, private medical records, questionnaires, letters, and VA forms. R. 510, 513. The VA went on to explain its disability decision as to Plaintiff's mental impairments as follows:

> Service connection for adjustment disorder with mixed anxiety, depressed mood, chronic, and cannabis use disorder (claimed as any mental condition secondary to knees and left foot) has been established as related to the service-connected disabilities of right knee joint osteoarthritis, osteoarthritis, left knee, and residuals of foot injury with fusion left great toe. The VA examiner has opined that your adjustment disorder with mixed anxiety, depressed mood, chronic, and cannabis use disorder is at least as likely as not related to your service connected right knee joint osteoarthritis, osteoarthritis, left knee, and residuals of foot injury with fusion left great toe. (38 CFR 3.310)
>
> The effective date of this grant is January 9, 2019. Since we received your application for compensation within one year of receipt of your intent to file, your effective date is January 9, 2019. (38 CFR 3.155b, 38 CFR 3.400)
>
> We have assigned a 70 percent evaluation for your adjustment disorder with mixed anxiety, depressed mood, chronic, and cannabis use disorder based on:
> - Forgetting names
> - Unprovoked irritability with periods of violence
> - Suspiciousness
> - Depressed mood
> - Near-continuous depression affecting the ability to function independently, appropriately and effectively
> - Disturbances of motivation and mood
> - Impaired judgment
> - Mild memory loss
> - Forgetting recent events
> - Impaired impulse control
> - Chronic sleep impairment
> - Near-continuous panic affecting the ability to function independently, appropriately and effectively
> - Panic attacks (weekly)
> - Difficulty in adapting to stressful circumstances
> - Difficulty in adapting to work
> - Flattened affect
> - Difficulty in adapting to a worklike setting
> - Anxiety
> - Difficulty in establishing and maintaining effective work and social relationships
> - Occupational and social impairment with reduced reliability and productivity
> - Forgetting directions

R. 514.

The ALJ found that Plaintiff's mental impairment was not severe because, *inter alia*, "the objective medical evidence related to this condition reflects no more than modest clinical findings." R. 15. In making this finding, the ALJ highlighted those portions of the record that he believed supported his step two finding, including a negative November 2017 cognitive status screen and a November 2018 depression screen that was interpreted as "merely mildly positive, with a score of 4." *Id*. Although the ALJ refers generally to, *inter alia*, the VA decision at Exhibit 8F (R. 509–18), he wholly failed to mention the evidence underlying that decision, including all the functional and social limitations outlined above. R. 514. For example, in finding only a mild limitation in Plaintiff's ability to interact with others, the ALJ noted that Plaintiff alleged no problems in this area of functioning and noted, too, that Plaintiff was able to shop and deal appropriately with authority. R. 15. The VA, however, noted that Plaintiff had "[d]ifficulty in establishing and maintaining effective work and social relationships" and "[f]orgetting names[.]" R. 514. Similarly, in finding only a mild limitation in Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ failed to acknowledge the VA's findings that Plaintiff, *inter alia*, suffered from "[o]ccupational and social impairment with reduced reliability and productivity[,]" "[n]ear-continuous depression affecting the ability to function independently, appropriately and effectively[,]" and "[n]ear-continuous panic affecting the ability to function independently, appropriately and effectively[.]" R. 514. In finding only a mild limitation in Plaintiff's ability to adapt or manage himself, the ALJ stated that "the substantial evidence of record does not reflect any meaningful issues with temper or impulse control[.]" R. 16. However, the VA specifically noted that Plaintiff experienced, *inter alia*, "[u]nprovoked irritability with periods of violence[,]" [i]mpaired impulse control[,]" "[d]ifficulty in adapting to stressful

circumstances[,]" "[d]ifficulty in adapting to work[,]" and "[d]ifficulty in adapting to a worklike setting[.]" R. 514.

This Court concludes that the ALJ erred when he relied on only those portions of the record that supported the ALJ's step two findings, while ignoring those portions of the record–particularly the evidence underlying the VA's decision–that contradicted the ALJ's findings in this regard. *See Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *Cintron v. Comm'r of Soc. Sec.*, No. 2:13-CV-7125, 2014 WL 6800613, at *10 (D.N.J. Dec. 2, 2014) ("An ALJ cannot rely on portions of documents from the record without also refuting 'the statements made therein that contradict his findings.'") (quoting *Cadavid v. Comm'r of Soc. Sec.*, No. CIVA 12–7214, 2014 WL 839453, at *9 (D.N.J. Feb.26, 2014)); *cf. DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.") (citations omitted).

The Acting Commissioner contends that, under the applicable new regulatory framework, the VA's "*disability decision* is 'inherently neither valuable nor persuasive to the issue of whether [a claimant] is disabled.'" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No.

19, pp. 13–14 (citing 20 C.F.R. § 404.1520b(c)(1)–(3) (2017); 82 FR 5844, 5848–49) (emphasis added). The Acting Commissioner therefore argues that "the ALJ was not required to provide 'any analysis about how [he] considered such evidence in [his] determination or decision.'" *Id*. at 14 (quoting 20 C.F.R. § 404.1520b(c)). The Acting Commissioner's arguments are not well taken. It is true that, for claims like Plaintiff's—*i.e.,* filed on or after March 27, 2017— "[*d*]*ecisions* by other governmental agencies and nongovernmental entities" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1) (emphasis added); *see also id*. at § 404.1504 (stating that "[o]ther governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . — make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules" and that that decision "is not binding on" Social Security disability decisions). In the present case, however, Plaintiff contends–and the Court agrees–that the Acting Commissioner erred when failing to address—not the VA's decision—but the evidence underlying the VA's decision, which conflicted with the ALJ's findings: The Social Security Administration ("SSA") "will consider *all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision* that [the SSA] receive[s] as evidence in [the claimant's] claim in accordance with § 404.1513(a)(1) through (4)." *Id*. at § 404.1504 (emphasis added); *see also Jeremy D.O. v. Kijakazi*, No. 1:20-CV-00403-CWD, 2021 WL 5701370, at *13–14 (D. Idaho Dec. 1, 2021) ("[T]he ALJ is required to consider all the evidence underlying the VA's decision—at least, all the evidence that was presented to the VA and also presented to the Social Security Administration, and to provide analysis of any significant, probative evidence contained in the VA records.") (citing, *inter alia*, 20 C.F.R. § 1504); *Reynaldo O. v. Kijakazi*, No. CV 19-10184-AS, 2021 WL 8895083, at *13–14 (C.D. Cal. Nov. 23, 2021) ("An ALJ is required to

14

consider all supporting evidence underlying a VA disability rating. . . . Here, the ALJ failed to consider the supporting evidence underlying the VA disability rating and did not mention the disability rating or any of the seven items of evidence underlying the disability rating in his decision. . . . The ALJ's failure to consider the supporting evidence underlying the disability rating was error.") (citing, *inter alia*, 20 C.F.R. § 1504); *cf. Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984) ("[I]t is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation.").

"Generally, an error at step two is harmless because it is a threshold test. . . . As long as one impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments." *Herring v. Colvin*, 181 F. Supp. 3d 258, 276–77 (M.D. Pa. 2014) (citations omitted); *see also Swaney v. Saul*, No. CV 18-1530, 2020 WL 529602, at *2 (W.D. Pa. Feb. 3, 2020) ("Rather, the ALJ proceeds beyond step two and, in so doing, an ALJ makes an RFC determination taking into consideration all impairments, including any impairment that is not severe. Thus, an ALJ will proceed to consider a plaintiff's severe and non-severe impairments in the evaluation process in determining a plaintiff's [RFC]."); *Taylor*, 2018 WL 2298358, at *8. As set forth above, "[h]owever, an error can harm the claimant if an impairment is improperly found to be not medically determinable or when non-severe impairments are not considered at later steps." *Herring*, 181 F. Supp. 3d at 277.

In the present case, the Court cannot conclude that the ALJ's error at step two regarding Plaintiff's mental impairment was harmless. At step four, the ALJ's RFC finding did not include any limitation in the areas of social interaction, concentration, persistence or pace, or adaptation:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined

15

> in 20 CFR 404.1567(a) except frequent pushing and pulling with the lower extremities; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and frequent exposure to extreme cold and heat, wetness, humidity, dust, fumes, odors, pulmonary irritants, and hazards, such as unprotected heights and moving machinery.

R. 16. In crafting this RFC, the ALJ specifically rejected the VA disability decision without considering the evidence underlying that decision and relating to Plaintiff's mental impairments, in violation of § 404.1504:

> The undersigned notes that the longitudinal record also contains a Veterans Affairs disability determination finding the claimant has a 100% disability rating due to his combined impairments (Exh. 8F). However, the undersigned notes that such a determination, rendered in a context with standards and procedures that may vary significantly from those of the Commissioner, are inherently neither valuable nor persuasive, as they are vague, lacking specific function-by function assessments, and conclusory, relating to the issue of Social Security disability reserved to the Commissioner.

R. 20. Notably, the ALJ then goes on to assert that "[t]he objective medical evidence since the alleged onset date, showing overall moderate clinical findings and fairly routine and conservative management, simply does not establish physiological or *psychological* abnormalities which would limit the claimant's daily activities to the profound degree alleged or preclude the claimant from performing at the residual functional capacity as assessed above." *Id*. (emphasis added). There is no other discussion of Plaintiff's impairments at step four when determining the RFC. *See generally* R. 16–21. Accordingly, the ALJ, after specifically excluding without explanation contrary evidence related to Plaintiff's mental impairments, "effectively screened out of the analysis [Plaintiff's mental impairments] at step two. As a result, the potential effect of the [mental] impairments, alone or in combination with each other and the [physical] impairments, was not analyzed at step three or subsequently." *Melendez v. Colvin*, No. CV 15 - 3209, 2016 WL 4718946, at *4 (D.N.J. Sept. 8, 2016); *see also Taylor*, 2018 WL 2298358, at *4, 9 (remanding where the ALJ effectively "'screened out' of the remaining disability evaluation

16

process at Step Two all of Plaintiff's mental impairments"); *cf. Wolf v. Saul*, No. CV 19-295, 2021 WL 734226, at *3 (W.D. Pa. Feb. 25, 2021) ("Moreover, while the ALJ found another impairment to be severe and did not deny Plaintiff benefits at step two, I cannot say these errors were harmless. . . . [I]n determining the RFC, the ALJ's discussion of Plaintiff's Asperger's syndrome, depressive, bipolar and related disorders, and neurodevelopmental disorders is scant. . . . Thus, I find the ALJ unexplained inconsistency at step two may have infiltrated the remaining parts of the sequential analysis and cannot be considered harmless."). Accordingly, based on this record, the Court cannot conclude that substantial evidence supports the ALJ's decision. It may be that, on remand, the ALJ will again find that Plaintiff's mental impairments are not severe and do not require any accommodation in the RFC, and the ALJ may ultimately conclude that Plaintiff is not disabled. However, at this juncture, the ALJ must explain his consideration of the evidence underlying the VA decision, and consider Plaintiff's mental impairments beyond step two in light of this evidence. This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of Plaintiff's mental impairments and of the evidence underlying the VA decision.[4]

V.     **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's mental impairments and the underlying medical evidence from the Department of Veterans Affairs at steps two and four, the Court does not consider those claims.

The Court will issue a separate *Order* issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 31, 2022                                     *s/Norah McCann King*
                                                   NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE